[Nos. 10837-9-I; 11751-3-I; 11411-5-I; 11977-0-I.     Division One.     April 11, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. SCOTT CARL SMITH, *Appellant.*

---

*David R. Wohl* and *James E. Sedney* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *William Downing, Deputy,* for respondent.

RINGOLD, J.—Scott Carl Smith appeals the judgment and sentence entered on his conviction by a jury of three counts of felony murder in the first degree and two counts of assault in the first degree. Three personal restraint petitions filed by Smith have been consolidated with this appeal. We affirm the judgment and sentence and deny the personal restraint petitions.

During the course of a robbery at the Barn Door Tavern in south King County in the early morning hours of June 12, 1980, the night manager and the bartender were shot and killed. The bartender's girlfriend was left by the rob-

bers with a cord tied around her neck and died of strangulation. The cook and the manager's spouse were left by the two robbers with electrical cords tied around their necks, but survived the robbery.

Smith was arrested the morning of June 13 on a warrant issued after his picture was identified in a photo montage by one of the surviving victims. After signing an acknowledgment and waiver of rights, Smith gave an inculpatory statement to police and led them to the gun and knife used in the robbery and to the money taken from the Barn Door Tavern.

Smith was charged with two counts of assault in the first degree, three counts of murder in the first degree, and one count of robbery in the first degree. Following trial, the jury returned guilty verdicts on all counts, with special interrogatories indicating that the murders had not been premeditated but that they did occur during the course of the robbery. Smith received three consecutive life sentences on the felony murder counts and two life sentences on the assault counts, to be served concurrently with the first life sentence for murder. The robbery conviction merged with the felony murders.

### EQUIVOCAL REQUEST FOR COUNSEL

A hearing pursuant to CrR 3.5 was held August 3, 1981, to consider the admissibility of Smith's statement to police. The arresting officers testified to the events surrounding the taking of Smith's statement. After having the *Miranda*[1] rights read to him, Smith had asked the officers at least twice, "Do you think I need an attorney?" or words to that effect. Smith testified that he had told the officers, "I believe I need an attorney. Don't you think so?", and had asked to make a telephone call. Following each request, Sergeant Weaver had responded that Smith would have to make that decision for himself. After a brief silence, Sergeant Weaver placed the rights form on the table in front

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

of Smith and asked him to read and initial each right. Smith then signed the rights form in two places, indicating that he understood his rights and wished to waive them, signed a consent to search form, showed the officers where to find the gun, knife, and money, and gave an inculpatory statement.

At the conclusion of the CrR 3.5 hearing, the trial court found as a fact that Smith had said "Do you think I need an attorney?" but had "never made a statement that he felt he needed an attorney nor a request to have one." The court concluded that Smith had knowingly and voluntarily waived his rights to remain silent and to counsel, and that his statements would be admissible at trial.

Smith argues that once he indicated to the arresting officers that he wished to consult with an attorney, interrogation should have ceased until an attorney was present.

*Miranda v. Arizona,* 384 U.S. 436, 444–45, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966) provides that if an accused "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." A limited exception to this rule provides that if the accused makes an equivocal request for an attorney, police questioning may continue for the sole purpose of clarifying the request. *State v. Robtoy,* 98 Wn.2d 30, 653 P.2d 284 (1982); *Nash v. Estelle,* 597 F.2d 513 (5th Cir.), *cert. denied,* 444 U.S. 981 (1979).

Whether Smith's statement was sufficient to invoke his Fifth Amendment rights is a question of law. *State v. Bledsoe,* 33 Wn. App. 720, 658 P.2d 674 (1983); *State v. Chapman,* 84 Wn.2d 373, 526 P.2d 64 (1974). *Webster's Third New International Dictionary* (1971) defines "equivocal" as "of doubtful meaning . . . uncertain as an indication or sign." The essence of an "equivocal request," therefore, is that without further clarification it is impossible to determine whether a request has been made. In *State v. Lewis,* 32 Wn. App. 13, 645 P.2d 722 (1982), this court held that a suspect evincing both a desire for counsel

and a desire to continue talking has made an equivocal request for counsel and clarification must be made. Similarly, where a suspect makes an ambiguous statement or an inartful statement with reference to his desire for an attorney, such as "maybe I should call my attorney," an equivocal request for counsel has been made and the request must be clarified before proceeding with the interrogation. *Robtoy.*

The trial court found as a fact, supported by substantial evidence, that Smith said, "Do you think I need an attorney?" To hold that Smith's question was not a "request" for counsel is to avoid the issue. Smith's question was an equivocal request for counsel, which required the officers to cease interrogation at least until the request was clarified.

Clarification of an equivocal request for counsel, however, need not be by additional questions such as "Do you want an attorney?", though such questioning is to be preferred. Here Smith sufficiently clarified his request when, after reflection, he signed the waiver form and spoke to the officers. This waiver, however, must be tested against the requirements in *State v. Pierce,* 94 Wn.2d 345, 352, 618 P.2d 62 (1980):

> the police may question a suspect who has once cut off questioning by requesting an attorney as long as (1) the right to cut off questioning was scrupulously honored, (2) the police engaged in no further words or actions amounting to interrogation before obtaining a valid waiver or assuring the presence of an attorney, (3) the police engaged in no tactics which tended to coerce the suspect to change his mind, and (4) the subsequent waiver was knowing and voluntary.

*See also Michigan v. Mosley,* 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975).

The trial court's findings, supported by substantial evidence, show facts sufficient to satisfy the *Pierce* standard. The trial court found that the police response to Smith's questions had been neutral. Thus between the time of Smith's requests and the signing of the waiver form the police did not engage in interrogation or coercive tactics.

The trial court also found that Smith had been advised of his rights three times, had acknowledged his rights by initialing each one and signing a statement that he understood them, and had signed a waiver of rights. Given these factual findings, we agree with the trial court's conclusion that the waiver was knowing and voluntary.

The fact that Smith made an equivocal request for counsel prior to waiving his rights, absent intervening interrogation or misconduct by police of the type proscribed in *Pierce* and *Robtoy,* does not affect the validity of the subsequent waiver. Since Smith waived his Fifth Amendment rights prior to giving his statement, any error by the trial court in failing to classify Smith's statement as an equivocal request for counsel was harmless beyond a reasonable doubt.

Pursuant to RCW 2.06.040, that portion of the court's opinion discussing Smith's remaining contentions, having no precedential value, will be filed for public record but not published. The judgment and sentence is affirmed.

SWANSON and CALLOW, JJ., concur.

Reconsideration denied May 24, 1983.

Review denied by Supreme Court September 2, 1983.