## 68672. THE STATE v. SUMMERS.
### (325 SE2d 419)

POPE, Judge.

The State appeals from the grant of a motion to suppress certain statements made by appellee Brian Michael Summers. Summers is accused of the murder of Kelly Vandersall. On June 11, 1983 Vandersall's body was discovered buried some four feet and ten inches deep in a wooded area of Columbia County. At the time of her death, Vandersall was a fifteen-year-old high school student. An autopsy was performed and a preliminary determination of death by strangulation was made. During its initial investigation, the GBI questioned several people who might have information regarding the girl. One of these was Summers, who had been one of Vandersall's teachers at Harlem High School. During this initial interview, Summers admitted driving Vandersall to her home on one occasion. Discrepancies between Summers' account and the accounts of others led the GBI to question Summers at his home a second time. Summers then stated he had driven her home several times.

On June 24, 1983 the GBI requested that Summers come to its Thomson headquarters for further questioning. Summers was initially questioned by Agent Seigler. Seigler informed Summers that he was not under arrest or in any type of custody and would be free to leave anytime he wished. Seigler informed Summers of his Miranda rights and Summers agreed to be interviewed, saying he understood his rights; after Summers signed a waiver form, Seigler proceeded to question him. In the course of the interview, Summers also underwent a polygraph examination administered by Seigler. After Seigler finished, Summers agreed to talk to another GBI agent named Cadle. Cadle again informed Summers of his Miranda rights and questioned him for about half an hour. In the interviews with Seigler and Cadle, Summers denied any knowledge of or involvement with the death of Vandersall. Combined, the two interviews lasted approximately two hours.

The crux of the suppression motion, and this appeal, comes from the third interview that day. Summers agreed to talk with Agent Tarvin when Agent Cadle concluded. Agent Tarvin again reminded Summers of his Miranda rights. At this point, we quote the trial court's findings of fact: "On June 24, 1983 Brian Michael Summers

was present for questioning concerning the death of Kelly Vandersall at the Georgia Bureau of Investigation (GBI) office in Thomson, Georgia. After being polygraphed and questioned by GBI Agents Mike Seigler and Homer Cadle, Summers was interviewed by GBI Agent James Tarvin. Agent Tarvin informed Summers that in past cases charges had been reduced for defendants who had cooperated. Agent Tarvin, during the course of that interview, informed Summers that a murder charge could be reduced to manslaughter and that any reduction in the charge would be up to the judge. Agent Tarvin also told Summers that if he cooperated it would be brought to the attention of the District Attorney's Office and to the attention of the court. During the course of that interview Agent Tarvin told Summers that fingerprints had been found at the victim's gravesite and if Summers did not cooperate with the Agent during the questioning, and the fingerprints subsequently were found to match Summers' prints, he would be arrested and Tarvin would not discuss the case with him again. During the course of that interview Agent Tarvin left the interview room to allow Summers to telephone his wife and when Agent Tarvin returned Summers told him that his wife had said he had the right to an attorney. Agent Tarvin did not treat this statement as a request for counsel, nor did he clarify the meaning of Summers' reference to his right to counsel. Agent Tarvin then informed Summers that if he left the GBI office at that time he would not be interested in discussing the case with him again, and he would not be in a position to tell the District Attorney or the Court that Summers had cooperated. At this time Brian Summers gave a statement to Agent Tarvin concerning his involvement in the death of Kelly Vandersall which was subsequently reduced to a recording."

From these findings the trial court concluded that Agent Tarvin had violated Summers' Sixth Amendment right to counsel set out in *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), and that Summers' statement had also been induced contrary to OCGA § 24-3-50 which reads, "To make a confession admissible, it must have been made voluntarily without being induced by another by the slightest hope of benefit or remotest fear of injury." The trial court then concluded that Summers' statement would be inadmissible at trial.

1. We cannot agree with the trial court's conclusion that Summers' Sixth Amendment right to counsel under the federal constitution was violated. The trial court reasoned that Summers' statement to Tarvin that "my wife informed me to go get a lawyer" was an equivocal request for a lawyer and that, under *Edwards v. Arizona*, supra, all questioning must cease except to clarify the equivocal request for an attorney.

Our Supreme Court discussed *Edwards v. Arizona*, supra, in

*Vaughn v. State*, 248 Ga. 127 (1) (281 SE2d 594) (1981). "The question of the admissibility of the written confession is controlled by *Edwards v. Arizona*, [supra]. There the court noted what has been characterized as a *per se* rule established in Miranda 'that the assertion of the right to counsel was a significant event and that once exercised by the accused, the interrogation must cease until an attorney is present.' The court then said that it would be 'inconsistent with Miranda and its progeny for the authorities, at their insistance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel.' Therefore, the court held that an accused who invokes his right to counsel will not be subject to further interrogation until counsel has been provided, 'unless the accused himself initiates further communication, exchanges, or conversations with the police.' " (Citations omitted.) *Vaughn*, supra at 130. "All of the above supposes a clear invocation of the right to counsel. The *Edwards* court cited, with apparent approval, a Fifth Circuit case which holds that waiver is possible if the request for counsel is equivocal. See *Nash v. Estelle*, 597 F2d 513 (5th Cir. 1979) (en banc)." Id. at 131.

Summers was a college graduate. He acknowledges in his testimony that he had been informed on at least three occasions that day by three different agents of his right to have an attorney while being questioned. We do not agree that the statement "my wife informed me to go get an attorney" was an equivocal request which would trigger the safeguards in *Edwards*. We see it merely as a statement that added nothing to what Summers acknowledged he already knew: he was entitled to an attorney. Summers argues that the rationales inherent in *Nash v. Estelle*, supra, and *Vaughn v. State*, supra, require suppression because Tarvin told Summers that if he left and got an attorney, Tarvin would not tell the judge and the district attorney that Summers had cooperated. We find such reasoning unpersuasive as it presupposes a mesmerizing, almost messianic hold by Tarvin over Summers. The findings by the court and the record do not support such a conclusion. Summers had been questioned for less than two and a half hours. He was alert, not under the influence of drugs or alcohol. He was told repeatedly he was there of his own volition and was free to leave at anytime. We hold that Summers' right to counsel was not violated and the statement is not inadmissible on that ground.

2. We turn next to whether the statement was induced in violation of OCGA § 24-3-50. The trial court concluded that Agent Tarvin had induced the statement by creating in Summers the hope of lighter punishment. We quote from the trial court's order: ". . . Tarvin gave Summers the impression that if he did not give a statement during that interview he would be harming himself because he would not be given a subsequent opportunity to cooperate. By Tar-

vin's own testimony, *it is apparent that he told the defendant that the judge was the only one who could reduce the charge from murder* but that he would inform the judge of Summers' cooperation. Summers testified that in addition *Tarvin told him that in past cases the court has reduced charges* for defendants who had cooperated. These statements would obviously create at the least a hope of lighter punishment in exchange for his cooperation, despite the fact that *Tarvin told Summers that he could not promise anything. . . .* It is also apparent from Tarvin's testimony that he told the defendant that if he did not cooperate Tarvin would not discuss the case any further with him. Thus Tarvin also created the impression that if Summers did not give a statement, his chance for lenient treatment would be lost." (Emphasis supplied.)

"[H]ope of lighter punishment (induced by one other than the defendant) is usually the 'hope of benefit' to which [OCGA § 24-3-50] refers. . . ." *Presnell v. State,* 241 Ga. 49, 55 (243 SE2d 496), rev'd as to sentence only, *Presnell v. Georgia,* 439 U. S. 14 (99 SC 235, 58 LE2d 207) (1978). We are aware that Agent Tarvin told Summers that if he cooperated, he would tell the district attorney of his cooperation and thereby possibly lighten any sentence. However, the record shows, as the trial court notes in its order, that Tarvin repeatedly told Summers that only the judge could reduce the charge or the sentence. Tarvin told Summers he could not promise anything. Where the police officer makes it clear that he has no power to affect the charges or the sentence, and simply states that he will tell the proper authorities of the suspect's cooperation if the suspect talks, and clearly states that he can make no promises, there is no violation of OCGA § 24-3-50 because such statements do not constitute "the hope of benefit" contemplated by the statute or the court in *Presnell,* supra. *Rounds v. State,* 166 Ga. App. 212 (2) (303 SE2d 543) (1983) (detective told suspect that if he cooperated with police, police would have to say so in court); *Stephens v. State,* 164 Ga. App. 398 (3) (297 SE2d 90) (1982) (officer told suspect that he would help himself by telling the truth and that judges love to hear that defendant helped the police); *Clayton v. State,* 156 Ga. App. 285 (1) (274 SE2d 682) (1980) (officer told suspect " 'if he entered a plea, the judge could sometimes take that into consideration; that that was up to the judge; that we wasn't the judge, and we couldn't promise him anything' "); *Cline v. State,* 153 Ga. App. 576 (4) (266 SE2d 266) (1980) (officer told suspect that if he confessed, the district attorney would be informed of his cooperation, but that the officer could not promise anything). Therefore, we conclude that under the findings made by the trial court, it was error to rule Summers' statement inadmissible at trial. Of course, at trial the jury has the ultimate power to decide whether the statement was freely and voluntarily given. See *Myrick v. State,* 155 Ga. App. 496

(2) (271 SE2d 637) (1980).
*Judgment reversed. Banke, P. J., and Benham, J., concur.*

DECIDED NOVEMBER 21, 1984 —
REHEARING DENIED DECEMBER 10, 1984 —

*Sam B. Sibley, Jr.*, District Attorney, *Charles R. Sheppard*, Assistant District Attorney, for appellant.
*Richard E. Allen*, for appellee.