### 42273. HALL v. THE STATE.
(336 SE2d 812)

BELL, Justice.

Donna Lynn Allen, a student at the University of Georgia, was stabbed to death on the University's Athens campus. Warren Reid Hall was convicted of her murder and sentenced to life imprisonment. He appeals, enumerating four errors; we affirm.[1]

---

[1] The victim was murdered on December 21, 1983. Hall was indicted on February 21, 1984. On July 11 he was reindicted, and a nolle prosequi on the original indictment was

1. In his first enumeration, appellant contends that the trial court erred in admitting a custodial statement made by appellant after he had invoked his right to counsel. The facts pertinent to this enumeration are as follow.

The victim was murdered on December 21, 1983. Appellant was arrested by Athens police on the afternoon of December 28, 1983, on suspicion of having used a gun to assault a woman earlier that day in a local shopping center parking lot. Appellant was taken into custody and advised of his *Miranda* rights by an arresting officer, Athens Police Corporal Bobby Tribble. Thereafter, he was driven to an Athens police station and was interrogated by Tribble and two other police officers, Detective Jeff Ingram of the Athens Police and Major Chuck Horton of the University of Georgia Police, for about forty to forty-five minutes. The interrogation initially focused on the December 28 aggravated assault and a similar incident which had occurred the previous day, in which a woman had been attacked with a knife.[2]

About fifteen or twenty minutes into the questioning session, appellant stated, "I guess I'm going to have to see a lawyer sometime." He was asked by Horton whether he wanted to see a lawyer at that time, to which he replied, "no, not now, just sometime." The interrogation continued. About twenty-five or thirty minutes later, the subject matter of the interrogation changed from the shopping center incidents to the Allen murder. Appellant denied responsibility for the murder, and asked one of his interrogators, "when do you think I'll get to see a lawyer."[3] There was no response to appellant's question. At that point, the questioning ceased, and appellant was transported to the Clarke County Jail.

Two days later, on December 30, 1983, appellant was interrogated a second time, by Maj. Horton and Det. Ingram. This interrogation, which lasted for about three and one-half hours, concentrated on

---

entered August 22.

The state sought the death penalty. On September 19, 1984, a jury returned a verdict of guilty. The following day the jury imposed a life sentence. Hall filed a motion for new trial on September 27, which was denied February 13, 1985. The court reporter completed certifying the transcript on that day.

Hall filed his notice of appeal on March 15, 1985, and the appeal was docketed in this court April 18. Thereafter, this court granted an extension of time until May 22 for Hall to file his enumerations of error and brief. On August 23, 1985, appellant submitted his appeal for decision without oral arguments.

[2] We are informed by appellant's counsel that after the appellant was convicted of murder he pled guilty to the December 27 and 28 attacks, and is now serving a total sentence of 45 years' imprisonment therefor.

[3] The quotations in the above paragraph are from the *Jackson v. Denno* testimony of Tribble. The three officers' testimony as to the content of appellant's statements varied in certain respects. This is not surprising, since the officers did not tape-record the interviews or take contemporaneous handwritten notes, and it was not until January 3, 1984, that Horton and Ingram, relying on their memories alone, reconstructed the two interrogations.

the Allen murder. Before this second interrogation, appellant was again advised of his *Miranda* rights. Appellant asked Ingram and Horton whether, if he signed the *Miranda* form, "did that mean he would have to talk to us every time we come [sic] to talk to him?" They "told him no; that this was concerning this time we were there. And if we asked him anything that he didn't want to answer he didn't have to answer it. And if he decided he wanted to stop and he wanted us to leave, we would do that."[4] Horton asked appellant whether he would talk with the officers without an attorney present; Hall said he would, and signed the *Miranda* waiver form. During this questioning session appellant admitted that he killed the victim. Both the December 28 and 30 statements were admitted into evidence at appellant's trial following a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

On appeal, Hall does not challenge the admissibility of his December 28 statement. However, he contends that he invoked his *Miranda* rights at the end of the December 28 interrogation, thus rendering his December 30 statement inadmissible because it was derived in violation of his Fifth Amendment right to counsel. More specifically, appellant contends that his question at the end of the December 28 interview clearly invoked his right to counsel. In the alternative, he contends that even if the question was not a clear invocation of the right to counsel, it was at least ambiguous, and the police therefore should have foregone further interrogation, except to clarify his meaning.

Appellant's contentions raise several distinct issues, which we will consider seriatim. The first is whether Hall's question, "when do you think I'll get to see a lawyer," constituted a clear and unequivocal request for the presence of counsel and, if not, whether it was an arguably ambiguous or inartful request for counsel.

"An accused in custody, 'having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him,' unless he validly waives his earlier request for the assistance of counsel. *Edwards v. Arizona*, 451 U.S., at 484-485, 101 S.Ct., at 1885. [Fn. omitted.] This 'rigid' prophylactic rule, *Fare v. Michael C.*, 442 U.S. 707, 719, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197 (1979), embodies two distinct inquiries. First, courts must determine whether the accused actually invoked his right to counsel. See, *e.g.*, *Edwards v. Arizona, supra*, 451 U.S., at 484-485, 101 S.Ct., at 1884-1885 (whether accused 'expressed his desire' for, or 'clearly asserted' his right to, the assistance of counsel); *Miranda v. Arizona*, 384 U.S., at 444-445, 86 S.Ct.,

---

[4] The quotations in this paragraph are from Ingram's *Jackson v. Denno* testimony.

at 1612 (whether accused 'indicate[d] in any manner and at any stage of the process that he wish[ed] to consult with an attorney before speaking'). Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked. *Edwards v. Arizona, supra,* 451 U.S., at 485, 486, n. 9, 101 S.Ct., at 1885, n. 9." *Smith v. Illinois,* ___ U. S. ___ (105 SC 490 at 492-93, 83 LE2d 488) (1984). See *Vaughn v. State,* 248 Ga. 127 (1b) (281 SE2d 594) (1981); *Berry v. State,* 254 Ga. 101 (1) (326 SE2d 748) (1985).

With respect to the first inquiry embodied by the Supreme Court's prophylactic rule, it is, as the instant case demonstrates, not always easy to determine whether the accused actually invoked his right to counsel. The existence of this problem was recognized in *Smith v. Illinois,* supra, 105 SC, wherein the Court stated, "[o]n occasion, an accused's asserted request for counsel may be ambiguous or equivocal[,]" 83 LE2d at 494, but declined to "decide the circumstances in which an accused's request for counsel may be characterized as ambiguous or equivocal as a result of events preceding the request or of nuances inherent in the request itself," id. at 496.

However, some guidance may be found in a decision emanating from the Court of Appeals of Washington. *State v. Smith,* 661 P2d 1001 (Wash. App. 1983). In that case the court observed that, "Webster's Third New International Dictionary (1971) defines 'equivocal' as 'of doubtful meaning . . . uncertain as an indication or sign.' The essence of an 'equivocal request,' therefore, is that without further clarification it is impossible to determine whether a request has been made. In *State v. Lewis,* 32 Wash. App. 13, 645 P.2d 722 (1982), this court held that a suspect evincing both a desire for counsel and a desire to continue talking has made an equivocal request for counsel and clarification must be made. Similarly, where a suspect makes an ambiguous statement or an inartful statement with reference to his desire for an attorney, such as 'maybe I should call my attorney,' an equivocal request for counsel has been made and the request must be clarified before proceeding with the interrogation. [Cit.]" *Smith,* supra, 661 P2d at 1002-1003. See also *Nash v. Estelle,* 597 F2d 513 (5th Cir. 1979) (en banc) (suspect expressed both a desire for counsel and a desire to continue the interview without counsel). We find the approach set out in *Smith* persuasive, and adopt it as our own.

Turning to the facts of this case, we conclude that Hall's utterance at the end of the December 28 interrogation was not a definite request for assistance of legal counsel before further interrogation; for example, appellant may have been perfectly willing to continue answering questions without an attorney, while at the same time have been merely curious about the possibility of being provided the assis-

tance of counsel at later stages of the criminal process, or perhaps, affirmatively have been requesting counsel for those later stages, see *Berry v. State*, supra, 254 Ga.[5] Supporting this interpretation is the fact that, just twenty-five to thirty minutes previously, Hall had stated that he wished to see a lawyer "sometime," but not during the interrogation.

Yet, the very ambiguity of his second reference to an attorney was sufficient to alert the investigators to the possibility that he might have been requesting present legal aid, particularly in light of the fact that the police had recently changed the topic of questioning to the Allen murder — it is reasonable to infer that Hall, suddenly faced with the possibility that he was the target of a murder investigation, may have changed his mind and decided he did require the assistance of counsel during further questioning about the Allen case, whereas he may not have felt the need for assistance during interrogation about the less serious aggravated assaults. Thus, we find that Hall's question at the end of the December 28 interrogative session was not a clear invocation of his Fifth Amendment right to the presence of counsel, but it was at least an arguably ambiguous or inartful request of that type.

2. The focus of our inquiry then becomes what is the appropriate response of police officers under such circumstances. As with the issue discussed in Division 1, supra, the Supreme Court has recognized the existence of this problem: "[C]ourts have developed conflicting standards for determining the consequences of such ambiguities." *Smith v. Illinois*, supra, 83 LE2d at 494. "Some courts have held that all questioning must cease upon any request for or reference to counsel, however equivocal or ambiguous. See, e.g., People v Superior Court, 15 Cal.3d 729, 735-736, 542 P2d 1390, 1394-1395 (1975), cert denied, 429 US 816, 50 L Ed 2d 76, 97 S Ct 58 (1976); Ochoa v State, 573 SW2d 796, 800-801 (Tex Crim App 1978). Others have attempted to define a threshold standard of clarity for such requests, and have held that requests falling below this threshold do not trigger the right to counsel. See, e.g., People v Krueger, 82 Ill 2d 305, 311, 412 NE2d 537, 540 (1980) ['(A)n assertion of the right to counsel need not be explicit, unequivocal, or made with unmistakable clarity,' but not 'every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel'], cert de-

---

[5] Where a request for counsel "is for a specific purpose other than interrogation, such as to have an attorney at trial, and does not encompass a 'desire to deal with the police only through counsel,' *Edwards v. Arizona*, 451 U. S. 477, 484-85 (101 SC 1880, 68 LE2d 378) (1981), interrogation may continue. *Ross v. State*, 254 Ga. 22 (3) (326 SE2d 194) (1985); *Collins v. Francis*, 728 F2d 1322, 1331-34 (11th Cir. 1984); *Jordan v. Watkins*, 681 F2d 1067, 1070-74 (5th Cir. 1982)." *Berry v. State*, 254 Ga. 101, 104 (1) (326 SE2d 748) (1985).

nied, 451 US 1019, 69 L Ed 2d 390, 101 S Ct 3009 (1981). Still others have adopted a third approach, holding that when an accused makes an equivocal statement that 'arguably' can be construed as a request for counsel, all interrogation must immediately cease except for narrow questions designed to 'clarify' the earlier statement and the accused's desires respecting counsel. See, e.g., Thompson v Wainwright, 601 F2d 768, 771-772 (CA5 1979); State v Moulds, 105 Idaho 880, 888, 673 P2d 1074, 1082 (App 1983)." *Smith v. Illinois*, supra, 83 LE2d at 494, fn. 3. However, to date the Supreme Court has declined to resolve this conflict. Id. at 494, 496.

Has any of the three approaches outlined by the Supreme Court been adopted in Georgia? In *Vaughn v. State*, 248 Ga. 127 (1b) (281 SE2d 594) (1981), this court cited *Thompson v. Wainwright*, supra, 601 F2d, and its precursor, *Nash v. Estelle*, supra, 597 F2d. In *Thompson* the Fifth Circuit said that "whenever even an equivocal request for an attorney is made by a suspect during custodial interrogation, the scope of that interrogation is immediately narrowed to one subject and one only. *Further questioning thereafter must be limited to clarifying that request* until it *is* clarified. When and if it is clarified as a present desire for the assistance of legal counsel, *all* interrogation must cease until that is provided, just as in the case of an initial, unambiguous request for an attorney. And no statement taken after that request is made and before it is clarified as an effective waiver of the present assistance of counsel can clear the *Miranda* bar." *Thompson v. Wainwright*, supra, 601 F2d at 771-772 (summarizing the holding of *Nash v. Estelle*, supra, 597 F2d). Accord *United States v. Cherry*, 733 F2d 1124 (5th Cir. 1984).

*Vaughn* was cited and applied in *State v. Summers*, 173 Ga. App. 24 (1) (325 SE2d 419) (1984) (grant of cert. vacated October 17, 1985). In *Summers* the Court of Appeals apparently assumed that the *Nash* standard had been implicitly adopted in *Vaughn*. See *Summers*, supra, 173 Ga. App. at 25-26. However, the Court of Appeals avoided applying *Nash v. Estelle* and *Thompson v. Wainwright* by holding that the appellant's statement "my wife informed me to go get an attorney" was not an equivocal request which would trigger the safeguard in *Edwards v. Arizona*, supra, 452 U. S., but was merely "a statement that added nothing to what Summers acknowledged he already knew: he was entitled to an attorney," *Summers*, supra, 173 Ga. App. at 25-26.

Notwithstanding the Court of Appeals' apparent assumption, our holding in *Vaughn* was not predicated upon the *Nash v. Estelle* approach to equivocal statements. In *Vaughn*, the appellant had "told the sheriff he wanted to talk to a lawyer but couldn't afford one." 248 Ga. at 128. We held that the defendant's written statement in that case should not have been admitted because there was "no indication

. . . that appellant's request for an attorney was either ambiguous or equivocal." *Vaughn,* supra, 248 Ga. at 131. Therefore, *Vaughn* left open the question of the appropriate standard to apply in Georgia.

We have examined numerous state and federal decisions which have addressed this problem, and many have elected to follow the *Nash v. Estelle* approach. See, e.g., *State v. Smith,* 661 P2d 1001 (Wash. App. 1983); *State v. Lewis,* 645 P2d 722 (Wash. App. 1982); *Sechrest v. State,* 705 P2d 626 (Nev. 1985); *Hampel v. State,* 706 P2d 1173 (Alaska App. 1985); *United States v. Fouche,* 776 F2d 1398 (9th Cir. 1985). Furthermore, we find that this is the soundest of the three tests outlined by the Supreme Court. As was stated by the Fifth Circuit in *Nash v. Estelle,* supra, 597 F2d at 517, "[w]hile the suspect has an absolute right to terminate station-house interrogation, he also has the prerogative to then and there answer questions, if that be his choice. Some persons are moved by the desire to unburden themselves to confessing their crimes to police, while others want to make their own assessment of what to say to their custodians." Where a suspect's desires are expressed in an equivocal fashion, "it is sound and fully constitutional police practice to clarify the course the suspect elects to choose." Id.

This reasoning was echoed by the Court of Appeals of Alaska in *Hampel v. State,* supra, 706 P2d at 1180, where that court stated, "[p]ermitting clarification of an accused's request is necessary to protect his rights without unduly interfering with reasonable police questioning. [Cit.] This approach avoids the rigid rule of prohibiting further questioning upon any vague reference to an attorney, while providing police and the courts with a standard which protects the rights of those who desire the presence of counsel at questioning but whose requests fail to meet an arbitrary threshold of clarity."

We therefore make explicit our approval of the Fifth Circuit rule, and adopt it as the rule to govern the evaluation of custodial interrogations in the courts of this state. Having done so, we apply that rule to the instant case, and find that at the point that Hall said, "when do you think I'll get to see a lawyer," the scope of any subsequent interrogation should have been narrowed to an attempt to clarify the nature of Hall's question. *Thompson v. Wainwright,* supra, 601 F2d at 771-72.

3. Thus, the remaining issue is whether the conversation between appellant and his interrogators at the commencement of the December 30 session operated as a proper clarification of appellant's statement at the end of the December 28 interrogation.

In this regard, "an interrogating officer may [not] utilize the guise of clarification as a subterfuge for coercion or intimidation. As the Supreme Court reiterated in *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977), in examining an alleged

waiver of the right to counsel 'courts indulge in every reasonable presumption against waiver.' *Miranda* stated that a suspect may waive effectuation of his rights but only if 'the waiver is made voluntarily, knowingly and intelligently.' 384 U.S. at 444, 86 S.Ct. at 1612. The critical factor is whether a review of the whole event discloses that the interviewing agent has impinged on the exercise of the suspect's continuing option to cut off the interview." *Nash v. Estelle,* supra, 597 F2d at 517-18. Accord *State v. Lewis,* supra, 645 P2d at 727.

Applying this caveat to the facts of this case, we note at the outset that a more preferable course for Hall's interrogators to have followed would have been a short and direct question such as "Do you want an attorney now?", posed immediately after Hall's inquiry, "When do you think I'll get to see a lawyer." See *State v. Smith,* supra, 661 P2d at 1003. However, although that method of elucidation would have been somewhat easier for this court to evaluate, it is not the sole and exclusive way to pursue a *Nash v. Estelle* inquiry. "[W]e think it appropriate to emphasize that nothing in this opinion is intended to suggest that the police should feel constrained in responding to questions posed by the accused in the course of an interrogation. We further emphasize that, where the accused asks a question that contains an ambiguous or equivocal reference to the availability of counsel, an interrogating officer must be given considerable latitude in formulating a reasonable and responsive answer; in gauging the reasonableness of a specific answer, due regard must be given to the pressures under which it was formulated, and full account must be taken of the understandable limitations on the scope of legal expertise that can reasonably be expected under the circumstances." *Hampel,* supra, 706 P2d at 1181.

The latter proposition is illustrated by the facts and holding of *State v. Smith,* supra, 661 P2d 1001. In that case, the defendant had asked the arresting officers "at least twice, 'Do you think I need an attorney?' or words to that effect . . . Following each request, [an officer] had responded that Smith would have to make that decision for himself. After a brief silence, [the officer] placed the rights form on the table in front of Smith and asked him to read and initial each right. Smith then signed the rights form in two places, indicating that he understood his rights and wished to waive them, signed a consent to search form, showed the officers where to find the gun, knife, and money, and gave an inculpatory statement." Id. at 1002.

After ruling that Smith's question was an equivocal request for counsel which required the officers to cease interrogation at least until the request was clarified, the Court of Appeals of Washington held that Smith had "sufficiently clarified his request when, after reflection, he signed the waiver form and spoke to the officers." Id. at 1003.

In the instant case, the response of the police officers, i.e., their

rereading of *Miranda* rights and subsequent questions, was neutral, and did not constitute a subterfuge for eliciting a waiver under the guise of clarification. Moreover, there is no evidence that the police engaged in interrogation or coercive tactics during the two-day interim. We therefore find that the officers' response to Hall's equivocal request at the end of the December 28, 1983, interview was appropriately limited to clarifying that query, and that their efforts at clarification showed that Hall did not intend to invoke his Fifth Amendment right to counsel by virtue of that equivocal request. Accordingly, we hold that the trial court did not err by admitting appellant's December 30, 1983, statement into evidence.

4. Appellant's second enumeration complains of the admission of a transcript of an interview between himself and a graduate student in clinical applied psychology.

Several months before the murder, the Greene County Department of Family and Children Services referred appellant for treatment to the University of Georgia Psychology Clinic. There, he was treated by a licensed clinical applied psychologist (a tenured professor on the University faculty), who was assisted by a graduate student. On February 17, 1983, during the course of an interview between the student and appellant, appellant made certain damaging admissions, to the effect that he sometimes thought about "finding somebody . . . and raping them and then killing them." Before trial, appellant moved in limine to exclude the transcript of the interview, on the ground that it was a privileged communication under OCGA § 43-39-16, which provides that "[t]he confidential relations and communications between a licensed applied psychologist and client are placed upon the same basis as those provided by law between attorney and client; and nothing in this chapter shall be construed to require any such privileged communication to be disclosed." The trial court denied the motion, and Hall appeals that ruling, with appellant and the state raising numerous contentions in this regard.

However, in light of our holdings in Divisions 1 through 3, supra, we need not consider these arguments, for, assuming arguendo that the admission into evidence of Hall's statement to the graduate student was erroneous, the contents of his December 28 and 30 statements, which included his statement that he murdered Ms. Allen, made it highly probable that the error did not contribute to the verdict, and therefore did not harm the appellant. *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

5. In his third enumeration, Hall argues that the trial court erred in admitting evidence of the two separate incidents, on December 27 and December 28, 1983, in which he used weapons to attack women in public areas. These incidents were offered as similar offenses for purposes of showing identity, intent, bent of mind, course of conduct,

and malice. We find that they were not inadmissible for any of the reasons urged by the appellant. *Williams v. State,* 251 Ga. 749 (4) (312 SE2d 40) (1983).

6. The fourth enumeration concerns appellant's contention that the trial court erred in excluding for cause venirepersons who professed scruples against the death penalty. We find no error. *Parks v. State,* 254 Ga. 403, 413 (10) (330 SE2d 686) (1985); *Mincey v. State,* 251 Ga. 255 (2) (304 SE2d 882) (1983).

7. We have reviewed the record, and we find that the evidence was sufficient to enable a reasonable trier of fact to find that appellant Hall was guilty as charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur, except Weltner, J., who concurs in the judgment only.*

DECIDED DECEMBER 5, 1985.

*Timothy W. Floyd,* for appellant.
*Harry N. Gordon, District Attorney, Gerald W. Brown, Assistant District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Staff Assistant Attorney General,* for appellee.