### 44306. BROWN v. THE STATE.
(357 SE2d 563)

GREGORY, Justice.

Jeffery Noel Brown was convicted of the murder of Cheryl Ann Hughes, and sentenced to life imprisonment.[1] The evidence shows that on the evening of May 24, 1984, the defendant and victim went to a lake in Lincoln County, Georgia, where they drank beer and smoked marijuana. During the day the defendant had consumed, by his own admission, "one fifth and one pint" of whiskey. According to the defendant's post-arrest statements, he told the victim he wished

---

[1] The crime was committed on May 24, 1984, and the defendant was arrested on June 11, 1985. The jury returned a verdict on April 23, 1986, and the defendant was sentenced that same day. The defendant's motion for new trial was denied December 22, 1986. The transcript was certified on August 27, 1986, and docketed in this court on January 30, 1987. The case was submitted to us on briefs for decision on March 13, 1987.

to leave the lake because he was becoming too drunk to drive. The defendant stated they quarreled because the victim did not want to leave. The defendant stated he fired a .357 Magnum "into the air a couple of times," and that he "saw [the victim] getting shot," but that he could not remember shooting her. According to the defendant he then left the lake alone. He returned to the lake at a later time,[2] and threw his gun into the water; this gun was not recovered. The victim's body was discovered the following day in a wooded area by the lake. The medical examiner testified that the victim died as a result of three gunshot wounds. The ballistics expert testified that the bullets removed from the victim's body had been fired from either a .357 Magnum or a .38 Smith and Wesson.

On June 11, 1985, over a year after the victim's death, the defendant telephoned the Columbia County Sheriff's Department and stated he wanted to "admit to a crime" that he had "been carrying around on [his] chest . . ." He stated to the investigator who answered the phone, "Do you know Cheryl Ann Hughes? I did it." He then told the investigator where he could be located and asked her to come pick him up.

1. When viewed in a light most favorable to the verdict, this evidence authorized a rational trier of fact to find the defendant guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Gloria Huffman, an investigator with the Columbia County Sheriff's Department testified at trial that she received the call from the defendant on June 11, 1985 in which he admitted killing the victim. When Huffman answered the phone, the defendant asked her to identify herself. After she did so, he responded, "Oh yeah, I know you. You remember me. I used to be a 'trusty.' " The defendant moved for a mistrial on the ground that this evidence placed his character in evidence. The trial court denied the motion, and instructed the jury to consider this testimony solely to show that the defendant identified himself to the witness as the perpetrator of the crime. We agree that this testimony was relevant to identify the defendant. The fact that it may have incidentally placed the defendant's character in evidence does not render it inadmissible. *Boutwell v. State*, 256 Ga. 63 (2) (344 SE2d 231) (1986); *Daniels v. State*, 252 Ga. 30, 32 (310 SE2d 904) (1984).

3. Following his call of June 11, 1985, to the Columbia County Sheriff's Department, the defendant was placed under arrest and de-

---

[2] In one statement to the GBI the defendant maintained he had thrown his gun into the lake on May 25, 1984. In another statement he maintained he had thrown the gun into the lake "sometime in July, 1984."

tained in the Columbia County jail.[3] The defendant was visibly intoxicated at this time. The record is silent as to whether the defendant was given *Miranda* warnings.

The defendant testified at the *Jackson v. Denno* hearing that when law enforcement officers began "questioning" him following his arrest, he requested that a lawyer, Leonard Tuggle, be called to the jail. It is undisputed that Tuggle, who had previously represented the defendant on an unrelated matter, was summoned to the jail by the sheriff's office. Tuggle attempted to discuss the defendant's arrest, but the defendant was too intoxicated to communicate with him. Tuggle testified at the *Jackson v. Denno* hearing that he requested the defendant be transferred to Georgia Regional Hospital and that the defendant not be questioned by law enforcement officers unless Tuggle was present. Tuggle stated he was representing the defendant at this time on a *pro bono* basis, and was not appointed to represent him at trial because the defendant was tried in Lincoln County rather than Columbia County. Tuggle additionally testified he was called by a GBI agent whose name he could not remember, requesting permission to interview the defendant. Tuggle stated he refused to allow the interview.

The defendant was transferred to Georgia Regional Hospital on June 12, 1985. On three separate occasions during the following week, GBI agent Michael Seigler interviewed the defendant in the hospital. On each occasion Seigler read *Miranda* warnings to the defendant and in each instance the defendant made inculpatory statements which were admitted, over objection, in evidence. Seigler testified at the *Jackson v. Denno* hearing that he telephoned Tuggle prior to interviewing the defendant, and Tuggle stated he was not the defendant's attorney. Seigler testified Tuggle did not voice an objection to the interview of the defendant.

The defendant maintains the statements he made to agent Seigler were in violation of *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), and should not have been admitted in evidence. We agree.

The issue is not, as the state argued below, whether Tuggle was in fact the defendant's attorney at any stage of the proceeding, but whether the defendant invoked his right to counsel in response to questioning by law enforcement officers. The only evidence before us regarding this issue is the defendant's testimony that during questioning by the sheriff he asked that his lawyer be called. An attorney was called who instructed the law enforcement officials to not inter-

---

[3] Venue was proper in Lincoln County and the defendant was subsequently transferred there for trial.

view the defendant unless he was present.

"[A]n accused, such as [the defendant], having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, supra at 484-5. This court has held that we "must [first] determine whether accused actually invoked his right to counsel . . . [i.e.] whether accused expressed his desire for, or clearly asserted his right to, the assistance of counsel. [Cits.]" *Hall v. State*, 255 Ga. 267, 269 (336 SE2d 812) (1985). The only conclusion which can be drawn from the record before us is that the defendant invoked his right to counsel during questioning by the sheriff's office. "[I]f the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked. [Cits.]" *Hall*, supra at 270. Since it is undisputed in this record that the defendant did not initiate any of the interviews with agent Seigler, it was error for the trial court to admit statements made by the defendant during the course of the interviews.

4. We have examined the remaining issues raised by the defendant and conclude it is unlikely they will occur again should the case be retried.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 24, 1987 —
RECONSIDERATION DENIED JULY 30, 1987.

*Ben Barron Ross, Walton Hardin,* for appellant.
*Dennis C. Sanders, District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General,* for appellee.