## S89A0521. BRADY v. THE STATE.
(385 SE2d 653)

MARSHALL, Chief Justice.

The appellant James Gray Brady, Archie Neal Bowman, and Theodore Bullard Bradfield were indicted for the murder of Danny Lee Brown. Although the appellant was acquitted of a charge of having murdered the victim with malice aforethought, he was found guilty of two counts of felony murder.[1]

In this regard, Count 1 of the indictment alleged that the appellant, unlawfully and with malice aforethought, caused the victim's death by striking him with a gun. Count 2 alleged that the appellant, while in the commission of the felony of aggravated assault, unlawfully caused the victim's death by striking him with a gun, said as-

---

[1] The crime in this case was committed on August 19, 1987. The appellant was indicted on December 17, 1987. The trial began on March 7, 1988, and ended on March 11, 1988, at which time the convictions were entered and the sentence imposed. The appellant filed a motion for new trial on April 5, 1988, and the motion for new trial was denied on June 21, 1989. The notice of appeal was filed on July 11, 1989. The transcript was certified on August 25, 1989, and the appeal was docketed in this court on August 29, 1989. The case was argued orally on November 13, 1989.

sault being with the intent to rob the victim. Count 3 alleged that the appellant, while in the commission of the felony of aggravated assault, unlawfully caused the victim's death by striking him with a gun, an instrument which, when used offensively against a person, is likely to result in serious bodily injury.

The appellant was given two concurrent sentences of life imprisonment for convictions on the two counts of felony murder. In this direct appeal, the appellant argues that a statement made by him to police during a custodial interrogation was obtained in violation of *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981), and he also contends that the trial court infringed upon his right to a thorough and sifting cross-examination of a state's witness. Finally, he challenges the sufficiency of the evidence to support the verdict.

We hold that the evidence does not support the appellant's conviction of felony murder under Count 2, in that there is no evidence of any intent to rob the victim; however, we do note that the appellant's conviction under one of the felony-murder counts would have to be set aside on double-jeopardy grounds in any event. And, for reasons which follow, we affirm the appellant's conviction of felony murder under Count 3 of the indictment.

### Facts

State's witness Doyle Smith testified that the co-indictees appeared at his home on the evening of August 19, 1987. According to Smith, they were "freaked out," and they acted like they were high on drugs. The appellant told Smith that he had "accidently shot somebody. . . hit him in the head" and had to "put him in the ground." The appellant had blood on him, and there was blood on the truck they were driving, which they attempted to wash off. In the back of the truck, Smith observed a "tarp or tent wrapped up. . .Looked like a burrito wrapped up," and Smith heard gurgling noises coming from that direction. Smith dissuaded them from burying the body on his property, and he advised them to dump the body somewhere else and then notify medical authorities as to the location of the body. When one of Smith's neighbors turned on his floodlight and threatened to call the police, they left.

The victim's body was left by the co-indictees in a grassy, wooded area in close proximity to railroad tracks near Buckner Road in Cobb County, and it was recovered by law enforcement authorities at that location. The medical examiner testified that the cause of the victim's death was a "severe blunt-force head injury, trauma to his head."

Smith reported the preceding events to the police, who, on the morning of August 20th, went to the appellant's residence and interviewed him. Later that morning, when the appellant was at work, the police returned to the appellant's residence and interviewed his girl

friend, whose statement concerning the events of the night in question conflicted with the appellant's statement.

The appellant telephoned his house from his place of employment while the police were there, and the appellant asked to speak to one of the policemen. According to testimony given by the police officer at the *Jackson v. Denno* hearing, the appellant stated that, "if this continues to go further, I might need to get an attorney." At trial, the police officer testified that the appellant had stated that, "if this continued he had to get an attorney." In any event, after the appellant made this statement, the police officer responded that the appellant had the right to an attorney, although at that time it was the appellant's girl friend, and not the appellant, who was being questioned.

Later that day, the police recovered the victim's body. They then went to speak to the appellant at his place of employment. They advised him that although he was a suspect in the homicide investigation, he was not under arrest, but that they would like him to accompany them to police headquarters to discuss the incident. He agreed. At police headquarters, the appellant was again advised that he was not under arrest and was free to leave, although, prior to questioning him, the police informed the appellant of his *Miranda* rights, and he signed an acknowledgment, and written waiver, thereof.

Giving a version of events conflicting with his prior statement, the appellant stated that he, Bowman, and Bradfield had gone to the Bankhead Highway area to "rip off" drugs, because on prior occasions they had gotten mugged there. While at that location, the appellant was in the back of the truck, and the victim jumped in. The appellant stated at one point that he struck the victim on the head because he thought that he had a knife; later, the appellant stated that the victim had actually brandished the knife before the appellant hit him. In any event, according to the appellant, when he hit the victim with the gun, the gun discharged accidentally.

Blood-stained clothing and other items in the possession of the co-indictees on the night the victim was murdered were recovered by the police from various locations.

Eyewitnesses, including Ricardo Jackson, testified that the co-indictees were driving a truck in the Bankhead Highway area, ostensibly trying to purchase drugs. A man in the back of the truck identified as the appellant sampled some cocaine, but he stated that he was dissatisfied with its quality. Against his friend's advice, the victim got in the back of the truck as it was being driven off. Jackson testified that, as the truck was crossing a bridge in the area, he heard a gunshot. According to Jackson, the victim did not have a knife or weapon in his possession at that time.

At trial, the appellant testified that he was persuaded to accom-

pany Bowman and Bradfield to the Bankhead Highway area, because Bowman and Bradfield had been robbed there; they also persuaded him to bring his gun along for protection. After they arrived near Bankhead Court in the Maynard Court Apartments, Bowman and Bradfield — who had been drinking, smoking pot, and taking pills — were in the cab of the truck, and they began negotiating a drug deal with teenagers in the area.

The appellant further testified that as he, Bradfield, and Bowman were leaving, the victim jumped into the back of the truck. The victim reached into the window of the truck and began choking Bradfield. Because of this, and because he thought the victim had a knife, the appellant hit him on the head with a gun to "get him to either drop the knife or put his attention on me, or knock him out . . . I hit him on the head. I didn't hit him very hard. I don't know how hard you hit somebody to knock him out." According to the appellant, when the victim turned around, he had a knife, and he came at the appellant "with a scowl on his face . . . I didn't know what to do. I didn't know where to go. There was no place to go. I saw the knife coming up. I raised the gun. He grabbed my arm. I hit him in the head. He fell back."

Other evidence will be reviewed insofar as is necessary for a resolution of the issues raised.

1. In his first enumeration of error, the appellant argues that statements made by him to the police during the custodial interrogation were inadmissible under *Edwards v. Arizona*, supra, in that, prior to the interrogation, the appellant had expressed a desire to deal with the police only through counsel, and he did not thereafter initiate further discussions with the police.

*Edwards*, and its progenitor *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), establish what are referred to as "bright line" or "prophylactic" rules in order to safeguard the Fifth Amendment protection against compelled self-incrimination on the part of criminal defendants exposed to the perceived coercive effects of custodial police interrogation. *Solem v. Stumes*, 465 U. S. 638 (104 SC 1338, 79 LE2d 579) (1984); *Oregon v. Bradshaw*, 462 U. S. 1039 (103 SC 2830, 77 LE2d 405) (1983).

*Edwards*, 451 U. S. at 484-485, holds

> that an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

It has been held that this rule embodies two distinct inquiries:

first, whether the accused actually invoked his right to counsel; and, second, if such right was invoked, whether the accused thereafter initiated further discussions with the police, and knowingly and intelligently waived the right he had invoked. *Hall v. State*, 255 Ga. 267 (336 SE2d 812) (1985) and cits. If the first inquiry is answered in the affirmative, the second inquiry must also be answered in the affirmative before a court may admit incriminatory statements made by the defendant during a custodial police interrogation subsequent to the assertion by the defendant of his right to counsel. Id.

The *Edwards* rule was extended by the Supreme Court in *Michigan v. Jackson*, 475 U. S. 625 (106 SC 1404, 89 LE2d 631) (1986), wherein it was held that where a defendant has been formally charged with a crime and has requested the appointment of counsel at his arraignment, the Sixth Amendment guarantee to representation by counsel after the initiation of adversarial judicial proceedings prohibits the police from thereafter conducting a custodial interrogation of the defendant except under the parameters set out in *Edwards*. See *Cervi v. Kemp*, 855 F2d 702 (11th Cir. 1988).

Nonetheless, a reading of *Edwards,* and the cases interpreting and applying it, indicates that invocation of the *Edwards* rule, prior to the initiation of adversarial judicial proceedings, is predicated on a request for counsel by the defendant during the course of a custodial interrogation. *Smith v. Illinois*, 469 U. S. 91 (105 SC 490, 492, 83 LE2d 488) (1984) ("An accused in custody, 'having expressed his desire to deal with the police only through counsel, is not subject to further interrogation . . . .' "); *Thompson v. Wainwright*, 601 F2d 768, 771 (5th Cir. 1979) ("[W]henever even an equivocal request for an attorney is made by a suspect during custodial interrogation . . ."); *Michigan v. Jackson*, supra, 475 U. S. at 636 ("[T]he *Edwards* decision itself rested on the Fifth Amendment and concerned a request for counsel made during custodial interrogation, . . .").

In addition, not all references to counsel by the defendant constitute an assertion of the right to consult with an attorney prior to talking to the police. *Hall v. State*, supra, and cits. In this regard, where a defendant in actual police custody had made an ambiguous or equivocal reference to counsel, followed by a break in questioning, it was held that the *Edwards* rule had not been violated, and that the defendant's prior equivocal statements were sufficiently clarified, where the defendant, in response to subsequent questioning by the police, agreed to submit to police interrogation without the presence of counsel, and made inculpatory statements after he had been informed of his *Miranda* rights and signed a written waiver thereof. *Hall v. State*, supra. See also *State v. Summers*, 173 Ga. App. 24 (1) (325 SE2d 419) (1984); *Smith v. Illinois*, supra; *Nash v. Estelle*, 597 F2d 513 (5th Cir. 1979); *Thompson v. Wainwright*, supra. Cf. *Brown v. State*, 257 Ga.

330 (3) (357 SE2d 563) (1987).

As previously stated, the police were at the defendant's residence questioning his girl friend, when the defendant made a telephone call to his residence from his place of employment; during this telephone conversation, he informed the police that "if this continues," I "might need to get an attorney," or I "had to get an attorney." The police informed him that this was his right. Later that day, the police went to the defendant's place of employment, informed him that the victim's body had been found, and told him that, although he was not under arrest, they would like him to accompany them to police headquarters for questioning. He agreed to go.

Under the cases previously cited, we find no *Edwards* rule violation.

2. Second, the appellant argues that the trial court erred in prohibiting the defense from fully and thoroughly cross-examining Ricardo Jackson concerning his statement that the victim never carried a knife.

In this regard, on direct examination, the prosecutor asked Jackson if the victim ever carried a weapon, a knife. Jackson responded, "He had nairn, not even a knife."

On cross-examination, defense counsel sought to ask the witness questions concerning incidents in which the victim had been arrested as a result of brandishing knives in front of family members and attacking family members with knives. The prosecutrix objected on grounds that the victim's reputation or character for violence was not in issue, and, in regard to the specific facts of each incident, a copy of the criminal conviction was the best evidence.

When the defense complained that, in view of the victim's "rap sheet" showing that he regularly attacked people with knives, the prosecutrix purposely elicited an untrue answer on direct examination and thereby opened the door for this line of cross-examination, without regard to the admissibility of such evidence for impeachment purposes or to establish the victim's character or reputation for violence.

The trial court indicated its agreement with defense counsel's reasoning, although the court ultimately ruled that the defense could question the witness — concerning whether, on a specific date, the witness was aware that the victim was carrying a knife and used it to assault someone — without discussing any arrests of the victim as a result of such incidents.

Under the best-evidence rule, a certified copy of a criminal conviction is the requisite method of impeaching a witness on the ground that he has committed a crime involving moral turpitude. *Richards v. State*, 157 Ga. App. 601 (2) (278 SE2d 63) (1981). See also *Herrin v. State*, 138 Ga. App. 729 (6) (227 SE2d 498) (1976). However, the best-evidence rule is inapplicable

"where the essential fact to be proved is neither the existence nor the contents of the writing, but the existence of the independent fact itself, as to which the writing is merely collateral or incidental." . . . *Hicks v. Hicks*, 196 Ga. 541 (3) (27 SE2d 7). [*Hale v. Hale*, 199 Ga. 150, 153 (1) (33 SE2d 441) (1945).]

In any event, we agree with the appellant that the prosecutrix, by asking the state's witness whether the victim ever carried a knife, opened the door to cross-examination by the defense concerning these specific incidents in which the victim had assaulted other individuals with a knife, regardless of the fact that such evidence would not be admissible to impeach a witness or to establish one's reputation for violence.

However, as previously stated, the defense here was allowed to cross-examine the witness concerning these incidents, although counsel was not allowed to question the witness concerning any arrests of the victim that may have resulted from these incidents.

We hold that in placing this limitation on the scope of the appellant's cross-examination of the witness, the trial court did not abridge the appellant's right to an effective cross-examination of the witness, or abuse its discretion. E.g., *Dick v. State*, 246 Ga. 697 (16) (273 SE2d 124) (1980); accord *Johnson v. State*, 258 Ga. 504 (3) (371 SE2d 651) (1988).

3. There was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that the appellant unlawfully caused the victim's death while engaged in the commission of the felony of aggravated assault by striking the victim on the head with a gun.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED NOVEMBER 21, 1989.

*Charles G. Haldi, Jr.,* for appellant.
*Thomas J. Charron, District Attorney, Nancy I. Jordan, Rose L. Wing, Assistant District Attorneys, Michael J. Bowers, Attorney General, Richard C. Litwin,* for appellee.