# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48618-1-II |
| Respondent, | |
| v. | |
| RAY CHARLES HARRIS, | Consolidated with: |
| Appellant. | |
| In re the Matter of the Personal Restraint of | No. 49909-6-II |
| RAY CHARLES HARRIS, | UNPUBLISHED OPINION |
| Petitioner. | |

LEE, J. — Ray Charles Harris appeals his convictions for felony violation of a court protection order and fourth degree assault, both involving domestic violence, arguing that: (1) his statements to the arresting officer were inadmissible because they were the product of custodial interrogation; and (2) admission of his girlfriend's statements to her treating physician violated his rights under the confrontation clause of the Sixth Amendment. In a statement of additional grounds (SAG), Harris argues that (1) his statements to law enforcement were inadmissible hearsay, (2) the prosecutor committed prosecutorial misconduct in its charging decision, (3) the prosecutor committed prosecutorial misconduct by re-arraigning him on dismissed no contact order violations, (4) the trial court violated his due process rights by entering a not guilty plea on his

behalf, (5) the State charged him with two fraudulent convictions of no contact order violations, (6) the trial court erred in denying his motion to dismiss based on *Crawford v. Washington*[1], (7) the trial court erred in finding his challenge to the testifying physician's testimony irrelevant, (8) he was provided ineffective assistance of appellate counsel, and (9) the trial court erred in denying his motion to withdraw guilty pleas in two prior cases. Harris also filed a personal restraint petition (PRP) challenging the calculation of his offender score.

We hold that Harris's challenges in his direct appeal and SAG fail. We also hold that Harris's challenge in his PRP fails, but we note that the judgment and sentence includes scrivener's errors. Accordingly, we affirm Harris's convictions and deny his PRP, but we remand to correct Harris's judgment and sentence in accordance with this opinion.

FACTS

A. THE INCIDENT

On the evening of September 7, 2015, Tacoma police officers responded to a domestic violence call at an apartment complex. The reporting party, Precious Gant, told police that she and her boyfriend, Harris, had gotten into an argument over food. Gant said that Harris punched her in the head with a closed fist, grabbed her by the throat, and started squeezing until she could no longer breathe. Harris reportedly left the apartment before the officers arrived. Gant was transported to the hospital for medical treatment.

When Officer Brett Beall of the Tacoma Police Department responded to the call at the apartment complex, he began searching the area for Harris. Officer Beall located Harris walking

---

[1] 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

on a sidewalk approximately four and a half blocks away from the apartment. Once he saw Harris, Officer Beall pulled his patrol vehicle over to the sidewalk, addressed Harris by name, and told him to stop walking. Officer Beall asked Harris what had happened at the apartment. Harris stated that he had made food for his girlfriend, which she refused to eat. This escalated into an argument where Gant began throwing items in the apartment and then slapped Harris. Harris slapped Gant back and then left the apartment because he was tired of dealing with Gant.

Officer Beall asked Harris if there was a protection order between him and Gant. Harris responded that there was a protection order, but he believed it had expired. Officer Beall did a records check for Harris's name and discovered that there was a current and valid protection order between Gant and Harris. Based on this information, Officer Beall arrested Harris, placed him in the rear of his patrol vehicle, and read Harris his *Miranda*[2] warning. Harris declined to answer any questions after receiving his *Miranda* warning.

The State charged Harris with second degree assault[3] and domestic violence court order violation.[4] Harris waived his constitutional rights to counsel and to a jury trial.

The State later amended the charges against Harris, charging in the alternative to the domestic violence court order violation charge, the crime of violation of a court order (protection/other). At re-arraignment, Harris proceeded pro se and refused to enter a plea. The

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] RCW 9A.36.021(1)(g).

[4] RCW 26.52.020; RCW 26.50.110(5); RCW 10.99.020. The legislature amended RCW 26.50.110(5) twice in 2015 and once in 2017. LAWS OF 2015, ch. 248, § 1; LAWS OF 2015, ch. 275 § 15; LAWS OF 2015, ch. 230, § 9. The amendments did not alter the statute in any way relevant to this case; accordingly, we cite to the current version of the statute.

trial court responded that it would be preserving Harris's rights and entered a plea of not guilty on Harris's behalf.

About a month later, the State again amended the charges and included an additional count of fourth degree assault.[5] All charges against Harris alleged the crime involved domestic violence.[6] CP 64-66.

B. CrR 3.5 HEARING

The trial court held a CrR 3.5 hearing to determine the admissibility of Harris's pre-*Miranda* statements to Officer Beall. The facts for the purposes of the CrR 3.5 hearing were undisputed.

After the hearing, the trial court found that when Officer Beall responded to the September 7 domestic violence call, he located Harris walking on the sidewalk about four and a half blocks from the apartment complex. Officer Beall pulled his patrol vehicle next to the sidewalk and called out to Harris. Officer Beall asked Harris what happened. Harris responded that he and his girlfriend, Precious Gant, had gotten into an argument, Gant slapped him, and he slapped her back. Harris was calm and cooperative during his contact with Officer Beall. After Officer Beall was informed by another officer that there was probable cause to arrest Harris, Officer Beall arrested Harris and placed him in handcuffs.

---

[5] RCW 9A.36.041(1)(2).

[6] RCW 10.99.020.

The trial court concluded that all of Harris's statements to Officer Beall were made voluntarily. The trial court ruled that the statements Harris made prior to his arrest were not the product of custodial interrogation and were admissible at trial.

C.     RELEVANT PORTIONS OF TRIAL

1.     Motion to Withdraw Guilty Pleas

Pretrial, Harris moved to withdraw his guilty pleas in two prior cases—a 1984 plea of guilty to second degree rape and a 1980 plea of guilty to second degree robbery. He argued that at the time he pleaded guilty to those crimes, he was not aware that they were strike offenses. The trial court ruled that Harris's motion was untimely and inappropriate under the current cause number.

2.     Witness Testimony

At trial, Officer Beall testified to the facts as described at the 3.5 motion hearing. A material witness warrant was issued for Gant, but she failed to appear for trial.

Diane Scheer, M.D., the physician who treated Gant in the emergency room on September 7, also testified. Dr. Scheer testified that she created a medical record on Gant during the normal course business in the emergency room. The entries made in Gant's medical record were made near or at the time of Gant's visit to the emergency room.

Dr. Scheer also testified that when treating a patient in the emergency room, she asks the patient about the facts and circumstances surrounding the visit. She asks these questions because the patient's history is "usually 90 percent of the diagnosis." 2 VRP at 92. Gant told her that her boyfriend had punched the left side of her body multiple times. Gant also said that she was experiencing pain in the area where she was punched, which included her left cheek, left arm, and the left side of her head. Gant also reported that she had blurred vision and shortness of breath.

Because of Gant's reported blurred vision, Dr. Scheer performed a fluorescein exam to look for scratches to the cornea. As to Gant's shortness of breath, Dr. Scheer concluded Gant was possibly suffering from hyperventilation due to anxiety or fear. Ultimately, Dr. Scheer diagnosed Gant with "assault, abrasions, and contusion." 2 VRP at 94.

The State moved to admit Gant's emergency room medical record into evidence as a business record, and Harris did not object. The trial court admitted Gant's emergency room medical record into evidence.

On cross-examination, Harris asked Dr. Scheer to present identification to verify her identity. The State objected. The trial court ruled that Harris's line of questioning was irrelevant because Dr. Scheer had testified under oath as to her identity. Dr. Scheer testified on cross-examination that she did not observe any visible marks on Gant's neck.

3.      Motion to Dismiss

After the State rested its case, Harris brought a "motion to dismiss due to lack of evidence." 2 VRP at 138. Harris relied on *Crawford v. Washington*,[7] to argue that the case should be dismissed because Gant failed to appear for trial.

The trial court did not grant Harris's motion based on *Crawford*, but it did grant Harris's motion for a directed verdict as to the second degree assault charge. The trial court ruled that in viewing the evidence in the light most favorable to the State, a reasonable jury could not find beyond a reasonable doubt that Harris committed second degree assault. However, the trial court ruled that the evidence was sufficient for a reasonable finder of fact to find beyond a reasonable

---

[7] 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

doubt that Harris was guilty of violation of a domestic violence protection order and fourth degree assault.

D.  VERDICT AND SENTENCE

Following the bench trial, the trial court found Harris guilty of felony violation of a court order (protection/other) and fourth degree assault.  The trial court also found that both crimes involved domestic violence.

At sentencing, the State calculated Harris's offender score as a 6.  The State's calculation of Harris's criminal history included prior convictions for: (1) second degree robbery; (2) failure to register as a sex offender; (3) second degree rape; (4) bail jumping; (5) fourth degree domestic violence assault; and (6) third degree domestic violence malicious mischief.

The sentencing court found Harris's offender score to be a 6.  The sentencing court then sentenced Harris to serve 48 months with up to 12 months of community custody.

Harris appeals.  Harris also filed a PRP, which was consolidated with his direct appeal.

ANALYSIS

A.  HARRIS'S PRE-MIRANDA STATEMENTS WERE ADMISSIBLE

Harris argues that the statements he made to Office Beall were inadmissible because they were made during a custodial interrogation.  We disagree.

1.  Standard of Review

We review de novo whether a criminal defendant was in custody for purposes of *Miranda*. *State v. Rosas-Miranda*, 176 Wn. App. 773, 779, 309 P.3d 728 (2013).  Unchallenged findings of fact are considered verities on appeal.  *State v. Alexander*, 125 Wn.2d 717, 723, 888 P.2d 1169 (1995).

2.        Harris was not Subjected to Custodial Interrogation

*Miranda* warnings safeguard a suspect's right against self-incrimination while in police custody. *State v. Lorenz*, 152 Wn.2d 22, 36, 93 P.3d 133 (2004). The *Miranda* requirement is triggered when an interview constitutes (1) custodial (2) interrogation (3) by a state agent. *Id.* Custodial interrogation is defined as "'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" *State v. Heritage*, 152 Wn.2d 210, 217, 95 P.3d 345 (2004) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)).

Courts employ an objective test to determine whether the defendant was in custody. *Id.* at 218. The inquiry is "whether a reasonable person in a suspect's position would have felt that his or her freedom was curtailed to the degree associated with a formal arrest." *Id.*

Conversely, an "on-the-street *Terry* stop" or a comparable traffic stop does not rise to the level of custody for *Miranda* purposes. *Heritage*, 152 Wn.2d at 218 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). The *Miranda* warning is not required because traffic stops and routine *Terry* stops are brief, occur in public, and are "substantially less 'police dominated'" than the type of police interrogations contemplated by *Miranda*. *Id.* During a *Terry* stop, an officer may ask the suspect a moderate number of questions in order to determine the suspect's identity and to "confirm or dispel the officer's suspicions." *Id.*

A routine *Terry* stop becomes custodial once the investigating officer has probable cause to believe that the person confronted committed an offense. *State v. Hilliard*, 89 Wn.2d 430, 435, 573 P.2d 22 (1977). Harris argues that he was in custody because Officer Beall knew of the alleged assault and his questions about what happened at the apartment and about a protection order were

8

designed to obtain incriminating information. In support, Harris relies on *State v. Lewis*, 32 Wn. App. 13, 17, 645 P.2d 722, *review denied*, 98 Wn.2d 1004 (1982).

In *Lewis*, the Kitsap County Prosecutor's Office had investigated Lewis for possible state securities laws violations. 32 Wn. App. at 14. The prosecutor's office arranged an interview with Lewis after investigators had obtained evidence that Lewis had violated state securities laws. *Id.* at 15. Because there was already probable cause to arrest Lewis before his interview, this court held that he was in custody for *Miranda* purposes as soon as he arrived at the interview. *Id.* at 18.

Here, Harris does not challenge the trial court's findings, and therefore, they are verities on appeal. *State v. Piatnitsky*, 170 Wn. App. 195, 221, 282 P.3d 1184 (2012), *aff'd*, 180 Wn.2d 407, 325 P.3d 167 (2014), *cert. denied*, 135 S. Ct. 950 (2015). The trial court's findings show that Officer Beall contacted Harris on a public sidewalk. Officer Beall did not physically restrain Harris until after Harris was arrested. Officer Beall's patrol vehicle was not parked in a way to restrict Harris's movement. A reasonable person in Harris's position would not have felt that his freedom was curtailed to a degree associated with formal arrest. Therefore, Officer Beall initiated an investigative *Terry* stop when he located Harris.

Because Officer Beall initiated a *Terry* stop, he was afforded latitude in asking questions to determine Harris's identity and to confirm or dispel his suspicions. *Heritage*, 152 Wn.2d at 218. Unlike in *Lewis*, Officer Beall did not have probable cause to arrest Harris when he first approached him. Before Officer Beall located Harris, he had only been informed of a reported domestic violence call. Officer Beall did not have any knowledge as to what specifically happened at the apartment between Harris and Gant. After Officer Beall verified that there was a valid protection order between Gant and Harris, Officer Beall then had probable cause to arrest Harris.

At that point, Officer Beall formally arrested Harris and informed him of his *Miranda* rights. Thus, Harris's statements to Officer Beall prior to arrest were not the product of custodial interrogation. We hold that the trial court did not err in admitting Harris's pre-*Miranda* statements.

B.     DR. SCHEER'S TESTIMONY

Harris argues that Gant's statements to Dr. Scheer in the emergency room were inadmissible because her motive in making them could not have been to promote medical treatment. He also argues that admission of Gant's statements through Dr. Scheer and admission of Gant's emergency room medical report violated his right to confront his accuser under *Crawford*, 541 U.S. 36. We disagree.

1.     Standard of Review

We review alleged violations of the confrontation clause de novo. *State v. Alvarez-Abrego*, 154 Wn. App. 351, 361, 225 P.3d 396, *review denied*, 168 Wn.2d 1042 (2010). We also review a trial court's interpretation of evidentiary rules de novo. *Id.* If the trial court correctly interpreted the evidentiary rules, then we review its admission of evidence for abuse of discretion. *Id.* at 362. A trial court abuses its discretion when its admission of evidence is manifestly unreasonable or based on untenable grounds. *Id.*

2.     Gant's Statements to Dr. Scheer

In *Crawford*, the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment prohibits testimonial hearsay, unless the declarant is unavailable and the defendant has had prior opportunity to cross-examine the declarant. 541 U.S. at 59; *State v. Moses*, 129 Wn. App. 718, 724, 119 P.3d 906 (2005), *review denied*, 157 Wn.2d 1006 (2006). Thus, the *Crawford* court distinguished between testimonial and non-testimonial out-of-court statements.

*State v. Fisher*, 130 Wn. App. 1, 11, 108 P.3d 1262 (2005), *review denied*, 156 Wn.2d 1013 (2006). If an out-of-court statement is testimonial, the declarant must be unavailable and the declarant must be afforded prior opportunity for cross-examination. *Id.* at 10-11. However, if the challenge involves nontestimonial hearsay, *Crawford* is inapplicable and we only need to examine the statement's admissibility under the hearsay rules. *Id.* at 13. Thus, as a threshold matter, we must determine whether Gant's statements were testimonial.

a. The Statements Were Not Testimonial

In examining *Crawford's* impact on statements admitted during medical treatment, Washington courts have focused on the purpose of the declarant's encounter with the healthcare provider. *Moses*, 129 Wn. App. at 729; *Fisher*, 130 Wn. App. at 13; *State v. Sandoval*, 137 Wn. App. 532, 537, 154 P.3d 271 (2007). A declarant's statements to a medical doctor are not testimonial "(1) where they are made for diagnosis and treatment purposes, (2) where there is no indication that the witness expected the statements to be used at trial, and (3) where the doctor is not employed by or working with the State." *Sandoval*, 137 Wn. App. at 537.

For example, in *Moses*, the defendant was charged with murdering his wife. 129 Wn. App. at 721-22. At trial, the State introduced testimony from an emergency room physician who had treated the wife following a prior domestic dispute with the defendant. *Id.* at 722, 730. The doctor testified that he had asked the wife what happened to her broken jaw in order to provide treatment. *Id.* at 728, 730. The court held that the doctor's questions were part of medical examination, as he had no role in the investigation of the assault and was not working on behalf of or in conjunction with the police or prosecution. *Id.* at 730. Therefore, the wife's statements to the doctor that her husband had assaulted her were not testimonial. *Id.* at 728, 730.

Similarly, in *Sandoval*, an assault victim told an emergency room physician that Sandoval hit her with his fist on the back of her head, kicked her on her back, and hit her multiple times with his belt. 137 Wn. App. at 536. At trial, the emergency room physician testified to the victim's statements and testified that she used this information to examine the victim's injuries. *Id.* at 538. The court held the victim's statements were not testimonial because the police were not present during the discussion, the doctor did not discuss whether a report would be used in a subsequent criminal investigation, and because the physician testified that identification in a domestic violence case helped her better communicate with patients. *Id.*

Comparatively, in *State v. Hurtado*, the court found that statements a victim made to an emergency room nurse about who hit her were testimonial because a police officer was also present and gathering evidence in the hospital room. 173 Wn. App. 592, 605, 294 P.3d 838, *review denied*, 177 Wn.2d 1021 (2013). There, the court held that a reasonable person in the victim's position would believe that her emergency room statements would be used in a subsequent prosecution because a police officer was present in the hospital room where she made the statement and was actively collecting evidence. *Id.* at 596, 605.

Here, as in *Moses* and *Sandoval*, Gant told Dr. Scheer that Harris had hit her as part of her medical diagnosis and treatment. Dr. Scheer testified that in treating a patient, she asks about the facts and circumstances surrounding the visit because that history is "usually 90 percent of the diagnosis." 2 VRP at 92. Because Gant stated that her boyfriend had punched her left cheek, left arm, and left side of her head, Dr. Scheer performed a fluorescein exam to look for scratches to Gant's cornea. Gant's account of what happened also led Dr. Scheer to conclude that Gant's hyperventilation may have been the result of fear or anxiety. Unlike in *Hurtado*, here, law

enforcement was not present when Gant spoke to Dr. Scheer. Thus, there was no reason for Gant to believe that her statements would be used in a subsequent prosecution. We hold that Gant's statements were not testimonial because they were made for diagnosis and treatment purposes, there was no indication that her statements would be used in trial, and Dr. Scheer was not employed by or working with the State.

b. The Statements Were Admissible as a Hearsay Exception

Although Gant's out-of-court statements were not testimonial in nature, the hearsay rules still govern their admissibility. *Fisher*, 130 Wn. App. at 13. ER 803(a)(4) provides an exception to the hearsay rules and allows admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." *State v. Sims*, 77 Wn. App. 236, 239, 890 P.2d 521 (1995) (quoting ER 803(a)(4)).

In general, statements attributing fault are not considered relevant to medical diagnosis or treatment. *Id.* However, in a domestic violence case, a statement attributing fault to an abuser may be relevant because a physician's treatment will differ when the abuser is a family or household member. *Id.*; *Fisher*, 130 Wn. App. at 14-15. For example, in *Fisher*, the court held that a child victim's statements attributing fault were admissible under ER 803(a)(4) because the doctor's inquiries were made, "not for trial preparation, but to determine the proper course and duration of medical care." *Id.* at 15. Likewise, in *Sims*, the court found statements made by a victim of domestic sexual assault admissible under ER 803(a)(4) because the physician and nurse

testified that the hospital had a policy of referring domestic violence victims to its social work department. 77 Wn. App. at 240.

Here, Gant's statements attributing fault to Harris were relevant to her medical treatment. Dr. Scheer testified that she asked about what caused Gant's injuries because that information was "usually 90 percent of the diagnosis." 2 VRP at 92. Gant's statements that Harris had punched the left side of her body, including her head, led Dr. Scheer to specifically examine Gant's cornea for damage. Gant's statements also helped Dr. Scheer determine what had caused Gant's hyperventilation. Therefore, it was not manifestly unreasonable for the trial court to conclude that Gant's statements were made for the purposes of medical diagnosis.[8]

### 3. Harmless Error

Even if the trial court erred in allowing Dr. Scheer's testimony, we find any error to be harmless.

---

[8] Harris also argues that Gant's statements were not made for purposes of obtaining medical treatment because she had already refused domestic violence services before speaking with Dr. Scheer. However, the record does not show that Dr. Scheer already knew Gant had refused domestic violence services before treating her. At trial, Dr. Scheer only testified that according to the medical report, a nurse named Terri Villanueva saw Gant in the emergency room. Nurse Villanueva later testified and said that her role was to collaborate with doctors to help treat patients. Nurse Villanueva testified that nurses collaborate with emergency room doctors "so that they know any other additional information the patient may have told us that they may have not told the doctor for whatever reason." 2 VRP at 113. However, Nurse Villanueva did not testify that she spoke with Dr. Scheer before Dr. Scheer treated Gant. She also did not testify that she informed Dr. Scheer that Gant had refused domestic violence services before Dr. Scheer met with Gant.

Also, Harris cites to no authority supporting his claim that a domestic violence victim's statements are no longer made for treatment purposes if he or she has already refused social services. Here, the hospital staff always liked to ensure that domestic violence victims had a safe place to stay after being discharged. As in *Sims*, this shows that Dr. Scheer asked about the circumstances surrounding Gant's injuries in order to determine a proper course of care.

Violation of a defendant's constitutional rights under the confrontation clause constitutes constitutional error. *Moses*, 129 Wn. App. at 732. Nonetheless, constitutional errors, including violation of a defendant's rights under the confrontation clause, may still be considered harmless. *Id.* In determining whether such error was harmless beyond a reasonable doubt, we must assess whether the untainted evidence was so overwhelming that it "necessarily leads to a finding of guilt." *Id.*

Here, the untainted evidence overwhelmingly supported a finding of guilt beyond a reasonable doubt. Officer Beall testified that Harris admitted that he was in the apartment with Gant and that he had slapped Gant. Officer Beall also testified that at the time, there was a valid domestic violence protection order between Harris and Gant. Thus, even without Dr. Scheer's testimony, the untainted evidence overwhelming supported a finding that Harris violated a protection order and committed fourth degree assault. Therefore, we find that even if the trial court erred in admitting Gant's statements to Dr. Scheer, the error was harmless.

4. Medical Report

Harris also argues that admission of the medical report violated his confrontation rights under *Crawford* and were inadmissible as a statement made for purposes of medical diagnosis.[9] We reject Harris's argument because the challenged statements within the medical report were the same statements Dr. Scheer testified to at trial. Because we find that Gant's statements to Dr. Scheer were non-testimonial and constituted a hearsay exception under ER 803(a)(4), we likewise find the same statements were admissible through the medical report.

---

[9] Harris does not object to the admission of the document itself as a business record exception to the hearsay rule.

C.   STATEMENT OF ADDITIONAL GROUNDS (SAG)

In a SAG, Harris argues that (1) his statements to Officer Beall were inadmissible, (2) the prosecutor committed prosecutorial misconduct in charging him with second degree assault, (3) the prosecutor committed prosecutorial misconduct by scheduling a re-arraignment hearing for no contact order violations from 2010 that had been dismissed, (4) the trial court erred in entering a plea of not guilty on Harris's behalf, (5) the State charged Harris with two fraudulent convictions of no contact orders in 2010, (6) the trial court erred in denying Harris's motion to dismiss under *Crawford*, (7) he should have been allowed to challenge Dr. Scheer's identity at trial, (8) his appellate counsel has provided ineffective assistance of counsel, and (9) he should have been able to withdraw his guilty pleas from 1980 and 1984.  We reject all of these challenges.

1.   Harris's Statements to Officer Beall

Harris argues that his pre-arrest statements to Officer Beall were inadmissible because they were hearsay.  Harris's statements were not hearsay, as they were an admission by a party opponent.  ER 801(d)(2).  Further, as discussed in *supra*, section A, Harris's statements were admissible because they were not the product of custodial interrogation.  Therefore, we hold that Harris's challenge fails.

2.   Prosecutorial Misconduct for Charging Second Degree Assault

Harris argues that the prosecutor committed prosecutorial misconduct by charging him with second degree assault when the medical reported stated "no strangulation."  SAG at 1.  We disagree.

Prosecutors are afforded considerable discretion in determining how and when to file criminal charges against a suspect.  *State v. Korum*, 157 Wn.2d 614, 625, 141 P.3d 13 (2006); *State*

*v. Judge*, 100 Wn.2d 706, 713, 675 P.2d 219 (1984). The Sentencing Reform Act recognizes prosecutorial discretion and provides standards—not mandates—to guide prosecutors in making charging decisions. *Korum*, 157 Wn.2d at 625. Under the SRA, a prosecutor shall file criminal charges involving crimes against persons when "sufficient admissible evidence exists, which, when considered with the most plausible, reasonably foreseeable defense that could be raised under the evidence, would justify conviction by a reasonable and objective fact finder." RCW 9.94A.411(2)(a). Thus, the prosecutor's charging decision must be rationally based on his or her ability to prove the charge. *Judge*, 100 Wn.2d at 713.

As an initial matter, nowhere in the medical report did Dr. Scheer or the attending nurse write "no strangulation," as Harris contends. The sole basis for Harris's claim of prosecutorial misconduct in charging is that the prosecutor could not prove second degree assault at trial.

In seeking determination of probable cause for second degree assault, the State filed a declaration by a deputy prosecuting attorney, stating that Gant had reported to police that Harris "grabbed her by the throat and started squeezing until Gant could not breathe." CP at 3. This statement constituted sufficient admissible evidence that would justify conviction by a reasonable and objective fact finder. Therefore, even though Gant did not appear at trial to testify to the statement, we hold that the prosecutor did not engage in misconduct by charging second degree assault.

3.      Retaliatory Prosecution in Re-Arraignment

Harris contends that the prosecutor engaged in retaliatory prosecution re-arraigning him for no contact order violations that were dismissed in 2010. Harris's contention is without merit.

Here, the record does not support Harris's claim that the State re-arraigned him for no contact order violations dismissed in 2010. Rather, the State filed documentation related to two charges against Harris for violation of no contact orders filed in 2010, as predicates to support the felony violation of a no contact order charge. RCW 26.50.110(5). The State also filed Harris's subsequent stipulation to those charges, which resulted in a finding of guilt on two violations of a no contact order. Harris signed this stipulation on June 28, 2010. This resulted in a judgment of guilty to two counts of violation of no contact orders, with the jail sentence imposed to run concurrently. There is no evidence in the record to show that the two 2010 no contact order violations were dismissed. Therefore, because Harris's argument is not supported by the record, we reject Harris's claim that the State engaged in retaliatory prosecution by re-arraigning him for two charges dismissed in 2010.

4.     Entering a Plea of Not Guilty

Harris argues that the trial court violated his due process rights by entering a plea of not guilty at his arraignment on November 30, 2015. We disagree.

Harris has cited no authority to support his proposition that the trial court judge violated his due process rights by entering a not guilty plea on his behalf. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

Further, the Washington Supreme Court has held that departure from formal arraignment procedures does not compel reversal when both parties proceeded to trial as if a not guilty plea had been entered. *State v. Riley*, 63 Wn.2d 243, 243-44, 386 P.2d 628 (1963). In *Riley*, the defendant

asked for numerous continuances at arraignment and as a result, he never entered a formal plea of not guilty. *Id.* Nonetheless, he proceeded to trial as if a not guilty plea had been entered. *Id.* The court held that Riley failed to show how departure from this formal arraignment procedure had resulted in prejudice, as he still retained the opportunity to enter a plea of guilty any time he desired. *Id.* at 244.

Here, Harris fails to demonstrate how a plea of not guilty on his behalf resulted in prejudice. As in *Riley*, Harris retained the right to change his plea to guilty until the conclusion of the case. Therefore, we reject Harris's argument.

5.      Fraudulent Conviction Charges

Harris argues that the prosecutor charged him with "two fraudulent convictions of no contact that allegedly occurred in 2010." SAG at 2. This argument is not supported by the record and, therefore, fails.

As discussed in *supra*, Section C.3, the documentation before the trial court related to Harris's 2010 no contact order violations. Nothing in these documents show that the convictions were fraudulent. Therefore, we hold that the record does not support this claim.

6.      Motion to Dismiss

Harris argues the trial court erred in denying his motion to dismiss the case for lack of evidence under *Crawford*. We disagree.

A criminal defendant may move to dismiss a criminal charge on the basis that there are no disputed material facts and the undisputed facts do not establish a prima facie case of guilt as a matter of law. *State v. Bauer*, 180 Wn.2d 929, 935, 329 P.3d 67 (2014). We review a trial court's ruling on a motion to dismiss de novo. *Id.*

Here, Harris argued that dismissal was warranted because he erroneously believed that *Crawford* compelled the court to dismiss a case when the victim failed to appear for trial. The trial court did not err in denying Harris's motion on this basis because *Crawford* does not stand for Harris's cited proposition. 541 U.S. at 59. Instead, *Crawford* prohibits admission of testimonial hearsay, unless the declarant is unavailable and the defendant has had prior opportunity for cross examination. *Id.* Therefore, we hold the trial court did not err as a matter of law in denying Harris's motion based on *Crawford*.

7.      Challenge to Dr. Scheer's Identity

Harris argues the trial court erred in sustaining the State's relevancy objection to his line of questioning challenging Dr. Scheer's identity. We disagree.

We review a trial court's ruling on relevancy and admissibility of testimonial evidence for manifest abuse of discretion. *State v. Aguirre*, 168 Wn.2d 350, 361, 229 P.3d 669 (2010). A trial court abuses its discretion when its evidentiary ruling is manifestly unreasonable or based on untenable grounds. *Alvarez-Abrego*, 154 Wn. App. at 362. An erroneous ruling with respect to relevance only warrants reversal "if there is a reasonable possibility that the testimony would have changed the outcome of trial." *Aguirre*, 168 Wn.2d at 361.

Here, Harris challenged the identity of Dr. Scheer by asking her to provide some form of identification. The trial court sustained the relevancy objection to this line of questioning because Dr. Scheer testified under oath as to her identity. This evidentiary ruling was not manifestly unreasonable or based on untenable grounds.

20

Further, Harris does not show how requiring Dr. Scheer to provide identification would have changed the outcome of the trial. He points to no evidence supporting his claim that Dr. Scheer testified under false pretenses. Therefore, we reject Harris's argument.

8.      Ineffective Assistance of Appellate Counsel

Harris contends that his appellate counsel has provided ineffective assistance by filing a meritless brief. Again, we disagree.

To establish ineffective assistance of appellate counsel, the petitioner must show: "(1) counsel's performance was deficient and (2) the deficient performance actually prejudiced the defendant." *In re Pers. Restraint of Morris*, 176 Wn.2d 157, 166, 288 P.3d 1140 (2012). In making this showing, the defendant must overcome "a strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Harris argues appellate counsel was ineffective because she filed a frivolous appeal. SAG at 4. An appeal is frivolous if, "considering the action in its entirety, it cannot be supported by any rational argument based in law or fact." *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 785, 275 P.3d 339, *review denied*, 175 Wn.2d 1008 (2012). We consider an appeal frivolous if the issues presented "are so devoid of merit that there is no reasonable possibility of reversal." *In re Marriage of Healy*, 35 Wn. App. 402, 406, 667 P.2d 114, *review denied*, 100 Wn.2d 1023 (1983). An unsuccessful appeal is not automatically frivolous. *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 220, 304 P.3d 914, *review denied*, 178 Wn.2d 1022 (2013).

Here, appellate counsel did not raise issues so devoid of merit that there was no reasonable possibility of reversal. Although we reject the issues raised on appeal, counsel provided factual and legal support to the claims that the trial court erred in admitting Harris's pre-*Miranda* statements and Dr. Scheer's testimony. Also, even if appellate counsel's claims lacked merit, Harris does not show how any deficient performance prejudiced him. SAG at 4. His outcome on appeal would not have changed had appellate counsel not presented these issues on his behalf. Thus, we reject Harris's ineffective assistance of counsel claim.

9.      Withdraw Guilty Pleas

Harris contends that the trial court erred when it denied his motion to withdraw guilty pleas from 1980 and 1984 prior to the start of trial in his present case. We disagree.

We review a trial court's denial of defendant's motion to withdraw a guilty plea for abuse of discretion. *State v. Pugh*, 153 Wn. App. 569, 576, 222 P.3d 821 (2009). The trial court abuses its discretion only if it bases its decision on untenable reasons or grounds. *Id.*

CrR 7.8 governs a defendant's motion to withdrawal a guilty plea post judgment. CrR 4.2(f). "Judgment" is the date the judgment and sentence are filed with the court clerk. *Id.* at 577. CrR 7.8 applies here because Harris moved to withdraw his 1980 and 1984 pleas post-judgment.

Under CrR 7.8(b)(1), the trial court "may relieve a party from a final judgment, order, or proceeding for . . . [m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." The court may also relieve a party from final judgment for "[a]ny other reason justifying relief from the operation of the judgment." CrR 7.8(b)(5).

Here, Harris moved to withdraw his guilty pleas because the prosecuting attorney and his defense attorney at the time "[d]id not stipulate the above charges were strikable offenses." CP at 12 (emphasis omitted). He also argued that the court never informed him of the consequences of entering into a guilty plea. However, even assuming Harris's motion was timely, Harris provided no support to show that neither the court nor his defense counsel informed him of the consequences of entering the 1980 and 1984 guilty pleas. Therefore, he provided no reason justifying relief from the operation of judgment. Thus, the trial court's denial of his motion was not based on untenable reasons or grounds.

D.     PERSONAL RESTRAINT PETITION (PRP)

Harris filed a PRP challenging the sentencing court's calculation of his offender score. Harris argues that the sentencing court included a dismissed first degree rape charge and, therefore, imposed a sentence contrary to Washington law. We hold that Harris's challenge to his offender score calculation fails.

1.     Legal Principles

In considering a timely PRP, we may grant relief only if the petitioner is under unlawful restraint as defined by RAP 16.4(c). *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 16, 296 P.3d 872 (2013). The petitioner must provide specific evidentiary support showing prejudice. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992). If the petitioner bases allegations "on matters outside the existing record, the petitioner must demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief." *Id.* It is insufficient for a petitioner to support a PRP with bald assertions and conclusory

allegations. *Id.* We review the calculation of an offender score de novo. *State v. Rodriguez*, 183 Wn. App. 947, 953, 335 P.3d 448 (2014), *review denied*, 182 Wn.2d 1022 (2015).

        2.        The Offender Score was not Miscalculated

Harris contends that the sentencing court erroneously calculated his offender score by including a first degree rape conviction that was dismissed in 1984. Harris is correct that the sentencing court's judgment and sentence show two first degree rape convictions in his criminal history report—one in 1981 and one in 1984. This is an error because the record shows that Harris was not convicted of first degree rape in 1981 or 1984. Rather, the record shows that he pleaded guilty to one count of second degree rape in 1981.

However, the record also shows that the sentencing court based its offender score calculation on his second degree rape conviction from 1981. The State did not present any evidence of a first degree rape conviction. Instead, the State presented the sentencing court with a certified copy of a conviction for second degree rape with an offense date of June 5, 1981. The State argued that Harris's offender score was 6 and presented the sentencing court with evidence supporting Harris's prior convictions for: (1) second degree robbery, (2) failure to register as a sex offender, (3) second degree rape, (4) bail jumping, (5) fourth degree domestic violence assault and domestic violence malicious mischief, and (6) the fourth degree assault concurrent to the felony

violation of a no contact order.[10] The sentencing court appears to have accepted the State's calculation and found that Harris's offender score was 6.

Harris's challenge to his offender score is based on the inclusion of a dismissed first degree rape conviction. In reply, he also argues that his prior fourth degree assault and malicious mischief charges "cannot be used as domestic violence as defined in RCW 9.94A.030." Reply Br. of Petitioner at 3. Because the sentencing court did not include a rape in the first degree conviction in the offender score calculation, we reject Harris's challenge to the calculation of his offender score. We also reject Harris's claim that fourth degree assault and malicious mischief cannot be domestic violence offenses because the record clearly shows that both crimes involved domestic violence. RCW 10.99.020(5)(d), (5)(n). Therefore, we deny Harris's PRP, but remand with instruction to correct the judgment and sentence regarding the 1981 and 1984 first degree rape convictions.

## APPELLATE COSTS

Harris asks that this court decline to impose appellate costs if the State prevails on appeal. The State argues that award of appellate costs is appropriate in this case. If the State makes a request for appellate costs, Harris may challenge that request before a commissioner of this court under RAP 14.2.

---

[10] In response to Harris's personal restraint petition, the State argues that the sentencing court counted Harris's third degree malicious mischief and fourth degree assault convictions as one point each. However, the record shows that the sentencing court counted the third degree malicious mischief and fourth degree assault as a combined one point because they were prior domestic violence crimes. The State then asked the sentencing court to count the concurrent fourth degree assault "as another current in this matter in regards to scoring of the felony violation of a no contact order." VRP (Feb. 5, 2016) at 162.

No. 48618-1-II

CONCLUSION

We hold that Harris's challenges in his direct appeal and SAG fail. We also hold that Harris's challenge in his PRP fail, but we note that the judgment and sentence includes scrivener's errors. Accordingly, we affirm Harris's convictions and deny his PRP, but we remand to correct Harris's judgment and sentence in accordance with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, P.J.

Sutton, J.

26